UNITED STATES DISTRICT COURT
DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| CHURCH MUTUAL INSURANCE,<br><br>Plaintiff,<br><br>v.<br><br>ETIMANI MAAFU, AN INDIVIDUAL; ROCKY MOUNTAIN CONFERENCE OF THE UNITED METHODIST CHURCH, A COLORADO NON-PROFIT CORPORATION; SALT LAKE CITY LAUMALIE MAONIONI FREE WESLEYAN CHURCH OF TONGA, A UTAH NON-PROFIT CORPORATION; VILIAMI HOSEA, AN INDIVIDUAL; HAVILI MONE, AN INDIVIDUAL; MANASE VAILEA, AN INDIVIDUAL; AISEA NAI, AN INDIVIDUAL; SIOSAIA HAUKINIMA, AN INDIVIDUAL; LYNDON LAUHINGOA, AN INDIVIDUAL; AND MELANIE NGAUE, AN INDIVIDUAL;<br><br>Defendants. | **MEMORANDUM DECISION**<br><br>2:13-CV-00672-DS<br><br>Judge David Sam |

## I. INTRODUCTION

This is an insurance coverage dispute in which Church Mutual seeks a declaration that it does not have a duty to defend or indemnify either of two factions in a battle for control over the

governance and property of a local church, formerly known as the Tongan United Methodist Church of Salt Lake City.  Church Mutual issued two insurance policies.  One is a professional liability policy issued to RMC and its affiliated congregations of the United Methodist Church, including "Trustees of RMC and its affiliated congregations." ("Professional Liability Policy"). The second relevant policy is a package policy that includes general liability and other coverages issued to United Methodist congregations within RMC's jurisdictional area ("Local Package Policy").

Church Mutual has moved for summary judgment under Fed. F. Civ. P. 56 and DUCivR 7-1 and 56-1 seeking the following declaration:

A. With respect to the Conference's Directors, Officers, and Trustees ("DOT") coverage:

   a. Church Mutual Has no duty to defend or indemnify Etimani Ma'afu in the Free Wesleyan faction lawsuit;
   b. Church Mutual has no obligation to pay for the Conference's prosecution of claims as an intervenor-counterclaimant in the suit against Ma'afu or as a plaintiff in the lawsuit against the Free Wesleyan faction and its directors; and
   c. Church Mutual has no duty to defend or indemnify the Free Wesleyan faction or its individual directors for the claims against them in both lawsuits.

B. With respect to the Church's Legal Defense coverage:
   a. One $20,000 Each Defensible Incident limit is the maximum amount of Church Mutual's coverage under the Church policy with respect to the underlying disputes and is subject to allocation among those parties claiming coverage as the Court directs.

C. With respect to the Conference Defendants' Counterclaim:
   a. Church Mutual has not breached its duty of good faith and fair dealing as a matter of law.

For the following reasons, the Court hereby denies Plaintiff Church Mutual's Motion for Summary Judgment, and therefore does not make the above declarations.

# I. ANALYSIS

**A. Church Mutual is not entitled to summary judgment with respect to the Conferences' DOT coverage.**

    **a. Church Mutual may have a duty to defend or indemnify Etimani Ma'afu in the Free Wesleyan faction lawsuit.**

In most situations, Utah follows an "eight-corners" rule, in which the duty to defend is based on the complaint and policy language alone. There is no duty to defend where the allegations, *if proven*, are not covered by the policy. Extrinsic evidence is not permitted. In this case the DOT coverage provides coverage to "Directors, Officers and Trustees" for "loss" caused by a "wrongful act." "Directors, Officers and Trustees" is defined as past or present directors, officers and trustees "while acting within the scope of their duties solely and exclusively for the operations and premises of the Named Insured." Church Mutual argues that The Free Wesleyan Complaint does not allege that Ma'afu is a past or present officer, director or trustee of the Church (or Conference), much less that he was acting solely and exclusively in his capacity as such with respect to the acts at issue. Church Mutual contends that the allegations in the Free Wesleyan Complaint, *if proven to be true,* do not establish that Ma'afu was a Director, Officer, or Trustee (and, thus, an "insured" under the duty-to-defend provision) or that he was acting solely and exclusively in his capacity as such with respect to the wrongdoing, as required for there to be coverage. Plaintiff concludes that because the complaint does not allege that Ma'afu was a past or present officer, director or trustee of the Church (or Conference), under the eight-corners rule, there is no duty to defend. While this might be true under a strict eight-corners rule, Utah courts recognize exceptions to the rule.

First, no one disputes that the United Methodists controlled the state law charter prior to December 7, 2012, and that Mr. Ma'Afu was an "Insured" "Trustee" prior to that date. All of the

allegedly "wrongful" conduct by Mr. Ma'Afu as a "Trustee" occurred prior to December 7, 2012.  Mr. Ma'Afu allegedly engaged in improper activities from October 2012 until the Dissident Complaint was filed on December 7, 2012, so the allegations of actionable conduct predate the complaint. UM SOF ¶ 24.  Second, it is undisputed that on December 7, 2012 the Free Wesleyans' entity (incorporated or not) became distinct from the religious entity affiliated with the United Methodist Church.  There is a strong argument to be made that the entity "Insured" under the policy continued to be the affiliated religious entity loyal to the United Methodist Church because Church Mutual defined Insured status by religious affiliation, not by state corporate law.  UM SOF ¶¶ 3-4.  Similarly, "Insured" status as a "Trustee" requires acting for the "Named Insured," and if the "affiliated congregation" is the Named Insured, then Mr. Ma'Afu would be the trustee.

   In addition, Utah courts recognize an exception to the eight corners rule when a question cannot be answered through an inspection of the complaint alone.  In that case, the court's examination must go on to develop the facts relevant to answer the inquiry.  In *Equine Assisted Growth & Learning Ass'n v. Carolina Cas. Ins.,* the Utah Supreme Court stated,

> In light of the language defining the scope of the exclusion, *an analysis limited to the 'eight corners' of the policy and the complaint is incomplete and fails to resolve the central inquiry*: Was the claim brought 'by, on behalf of, or in the right of [EAGALA]'? .  Accordingly, the court of appeals correctly concluded that the district court erred when it discontinued its analysis and limited its examination to the 'eight corners' of the policy and complaint.[1]

When policy language references objective reality, the Court is required to look at all available evidence to see if there exists the possibility of a covered loss, not just allegations.  In this case, the three coverage issues that Church Mutual raises—the insured verses insured exclusion, the

---

[1] 2001 UT 49, ¶ 3, 266 P.3d 733, 738 (emphasis added).

personal profit exclusion, and the scope of duty requirement—must all be considered based upon objective reality, not merely allegations.

### 1. When considered based on objective reality, the insured versus insured exclusion does not necessarily eliminate Church Mutual's duty to defend.

In *Equine* the Utah Supreme Court held that insured versus insured language almost identical to that in this case required a determination "based on objective facts that are not apparent from the face of the complaint, [and] the district court erred when it refused to consider extrinsic evidence. . . ."[2]  In the case before the court, the language of the policy indicates that Church Mutual insures local *affiliated* congregations of RMC irrespective of a corporate charter, including insuring some local church entities that have no state law corporate charter at all (for instance, Tooele United Methodist Church).  The TUMC Local Affiliate Church will remain a local church until RMC decides its denominational affiliation should be discontinued.  This is a religious decision, constitutionally reserved to RMC and the Professional Liability Policy seems to expressly embrace this reality**.**

### 2. The "personal profit" exclusion does not apply to the duty to defend.

The personal profit exclusion excludes "personal profit . . . to which [the Trustee was] not legally entitled").  Courts routinely find such past tense language does not apply to the duty to defend and applies, if at all, only in the event that legal liability is found based upon a 'personal profit' actually received.  Such receipt must be proven in connection with the underlying case or upon the presentation of extrinsic evidence, not allegations.

---

[2] *Alstrin v. St. Paul Mercury Ins. Co,* 179 F.Supp.2d 376, 398-99.

### 3. Mr. Ma'Afu was "acting within the scope of his duties"

The language of the Professional Liability Policy that provides coverage to Mr. Ma'Afu "while acting within the scope of [his] duties," requires evidence of an objective reality, not mere allegations. This is made clear because the Professional Liability policy *expressly* provides coverage for "Wrongful act[s]," defined as any "*actual or alleged*" conduct. Thus the Professional Liability Policy covers Mr. Ma'Afu for his conduct as a "Trustee" if such conduct is either alleged, or if Mr. Ma'Afu actually acted as a trustee. It is undisputed that at all times Mr. Ma'Afu acted within the scope of his duties for RMC and its "affiliated congregations" as a "Trustee" of the TUMC Affiliated Local Church. The Free Wesleyans do not allege to the contrary, but instead merely claim that under Utah corporate law, Mr. Ma'Afu had no authority after December 7, 2012 to act for the Free Wesleyans or their alleged state law "corporation." Providing liability insurance for the acts and omissions of Trustees would be illusory if the policy were interpreted, as Church Mutual now proposes, to eliminate coverage every time an underlying plaintiff alleged that a Trustee did something he should not have done as a Trustee.

**b**. **Church Mutual may have a duty to pay Rocky Mountain Conference's defense costs under the professional liability policy, and therefore is not entitled to summary judgment.**

Church Mutual notes that by its clear and unambiguous terms, the language of the DOT coverage applies only to the defense of the insured against a lawsuit seeking payment from the insured for "loss." The Utah Supreme Court has specifically noted that liability insurance policies "do[] not provide for any representation of its insured in an action against another party."[3] Church Mutual states that RMC is not a defendant in either action, and therefore, Church Mutual DOT coverage does not apply. Church Mutual also notes that Exclusion h provides that this insurance does not apply to "Any claim which is brought by or on behalf of the

---

[3] *Berlant v. McAllister,* 25 Utah 2d 237, 239, 480 P.2d 126 (1972)

organization or any insured." Church Mutual asserts that the Conference's Counterclaim against the Free Wesleyan faction in the lawsuit against Ma'Afu and its Complaint against the Free Wesleyan faction in its separate action, are claims "brought by or on behalf of the organization or any insured." The insured organization here is the conference.

Defendant Rocky Mountain Conference (RMC) points out, however, that applicable case law recognizes that the assertion of claims designed to defensively resolve issues of ownership and control of property fall within the duty to defend. The Court in *Hartford Fire Ins. Co. v. Vita Craft Corp.* stated that, "an insurer must pay the insured for defense of its counterclaims when either (1) the counterclaims reach the same or similar issues as the underlying plaintiff's claims so that the claims are intertwined; or (2) the counterclaims are part of the insured's defensive strategy to reduce its liability."[4] In fact, "[t]he authority appears virtually uniform in holding that there is a class of affirmative claims which, if successful, have the effect of reducing or eliminating the insured's liability and [such claims] . . . are encompassed in an insurer's duty to defend."[5]

In this case, RMC intervened as a defendant. RMC is the first named insured under the professional liability policy. The third district court ordered that RMC could intervene as a "matter of right," finding that RMC had "a sufficient interest [under] Rule 24(a)" in the personal and real property that is the subject of the Free Wesleyan complaint. RMC's claims seek to defensively diminish liability to the Free Wesleyans related to their claim of ownership and control of property held in trust for the United Methodist Church. It was necessary for RMC to defensively refute the Free Wesleyans' allegations of ownership and control of church property because property rights do not reside with individuals (Mr. Ma'Afu), but instead are

---

[4] *Hartford Fire Ins. Co. v. Vita Craft Corp.,* 911 F.Supp.2d 1164, 1183 (D. Kan. 2012)(citing cases).
[5] *Id.* (quoting *Great West Cas. Co. v. Marathon Oil Co.,* 315 F.Supp.2d 879, 881, 883 (N.D. Ill. 2003).

constitutionally protected from efforts to break away based on the existence of a trust for the benefit of the entire United Methodist Denomination. RMC became a defendant because the Free Wesleyans improperly sought to strategically claim ownership of property held in trust by suing only an individual. If RMC is properly a defendant, the assertion of "claims" designed to defensively resolve issues of ownership and control of property, fall within the duty to defend. The Free Wesleyan complaint and RMC's claims address the same fundamental issue of ownership and control of church property. If RMC prevails, the Free Wesleyans' claim for damages related to possession and control will be eliminated. Therefore, Church Mutual is not entitled to summary judgment on the issue of whether it has the obligation to pay for the Conference's prosecution of claims as an intervenor-counterclaimant.

**B. Church Mutual is not entitled to a declaration that Mr. Ma'Afu's coverage under the Local Package Policy is limited to a single $20,000 "Each Defensible Incident Limit."**

At a minimum, there exists a question of fact as to whether potential coverage exists under the "Personal injury" coverage part of the Local Package Policy, which applies to the Free Wesleyan's allegations that Mr. Ma'Afu improperly controlled property by allowing use by faithful United Methodists, and by excluding use by Free Wesleyans. UM SOF ¶ 16. These allegations would constitute a classic covered "offense" under this coverage subpart. Therefore, summary judgment is not appropriate here.

**C. Church Mutual is not entitled to a declaration that it has not breached its duty of good faith and fair dealing as a matter of law.**

Once again, the facts of this case demonstrate, at a minimum, that there exists a question of fact with respect to whether Church Mutual has complied with its good faith and fiduciary responsibilities. Therefore summary judgment is not appropriate.

### III. CONCLUSION

For the reasons stated above, the Court hereby denies Church Mutual's Motion for Summary Judgment (Doc. #47) in its entirety. This denial makes United Methodist's Rule 56(d) motion moot (Doc. #56).

DATED this 11th day of June, 2015.

BY THE COURT:

*David Sam*

JUDGE DAVID SAM

United States District Judge