UNITED STATES DISTRICT COURT
DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| CHURCH MUTUAL INSURANCE, <br><br> Plaintiff, <br><br> v. <br><br> ETIMANI MAAFU, AN INDIVIDUAL; ROCKY MOUNTAIN CONFERENCE OF THE UNITED METHODIST CHURCH, A COLORADO NON-PROFIT CORPORATION; SALT LAKE CITY LAUMALIE MAONIONI FREE WESLEYAN CHURCH OF TONGA, A UTAH NON-PROFIT CORPORATION; VILIAMI HOSEA, AN INDIVIDUAL; HAVILI MONE, AN INDIVIDUAL; MANASE VAILEA, AN INDIVIDUAL; AISEA NAI, AN INDIVIDUAL; SIOSAIA HAUKINIMA, AN INDIVIDUAL; LYNDON LAUHINGOA, AN INDIVIDUAL; AND MELANIE NGAUE, AN INDIVIDUAL; <br><br> Defendants. | **MEMORANDUM DECISION** <br><br><br> 2:13-CV-00672-DS <br><br> Judge David Sam |

## I. INTRODUCTION

This is an insurance coverage dispute in which Church Mutual Insurance Company ("Church Mutual") has sought a declaration that it does not have a duty to defend or indemnify

either of two factions in a battle for control over the governance and property of a local church, formerly known as the Tongan United Methodist Church of Salt Lake City. Church Mutual issued two applicable insurance policies. One is a professional liability policy issued to Rocky Mountain Conference of the United Methodist Church ("RMC") and its "affiliated congregations," including "Trustees" of RMC and its affiliated congregations ("Professional Liability Policy"). The second relevant policy is a package policy that includes general liability and other coverage issued to local United Methodist congregations within RMC's jurisdictional area ("Local Package Policy"). RMC pays the premiums for local package policies on behalf of more than 250 affiliated congregations of the United Methodist Church within RMC's area.

In this motion, Mr. Ma'Afu and RMC ("the United Methodist Defendants") seek a ruling that Church Mutual must provide a defense to Mr. Ma'Afu and RMC in connection with an underlying state court consolidated lawsuit originally filed by a dissident faction (the "Free Wesleyans") against Mr. Ma'Afu and for which RMC was joined as a defendant. Church Mutual argues that it has no duty to defend Mr. Ma'Afu and that there are no claims against the Conference for which a duty to defend could exist. After careful consideration of the extensive briefing, the Court hereby grants the United Methodist Defendants' Motion for Partial Summary Judgment on the Duty to Defend.

## II. ANALYSIS

The State Court action relates to a schism between existing and former members of a Salt Lake City congregation affiliated with the United Methodist church—The Tongan United Methodist Church. Two factions emerged vying for control of church property and litigation ensued. The dissident faction, the Salt Lake City Laumalie Ma'oni'oni Free Wesleyan Church of

Tonga clearly disaffiliated itself from RMC and the United Methodist Church.  When the Free Wesleyans allegedly amended the Articles of Incorporation (a copy of which are attached to the Dissident Complaint), they removed all references to the United Methodist Church and its Book of Discipline, and changed the purpose of the entity: "to conduct and operate a Christian church and congregation." Doc. #57-7 at 13, Article II. Their disaffiliation is also clear in the language that future affiliation can be pursued by "seeking authorized affiliation with a larger denomination as determined by the Corporation's Board of Directors." *Id.*  This is crucial, because the result of that alleged action was that the Free Wesleyans (whether incorporated or not) were not "insureds" under the Professional Liability Policy as of December 7, 2012.  The policy expressly covers only religiously "affiliated congregations" of RMC.

The other faction, The Tongan United Methodist Church ("TUMC") remains affiliated with RMC.  Both factions contend that they have control of the state law corporate charter.  Regardless of the status of the state law corporate charter, however, the congregation affiliated with RMC and the United Methodist Church is the only "Insured" entity under the express terms of the insurance policies issued by Church Mutual.  Even if the state court decides that the Free Wesleyans acquired TUMC's corporate charter as of December 7, 2012, they are nonetheless clearly not affiliated with RMC and therefore not an "Insured" religious entity even for the brief period from December 7, 2012 until the policies expired on January 1, 2013.

**I. The Duty to Defend Under Utah Law.**

Utah law states that, "An insurer's duty to defend is broader than its duty to indemnify. Its defense duty arises when the insurer ascertains facts giving rise to potential liability under the

insurance policy."[1]  [I]nsurance policies should be construed liberally in favor of the insured and their beneficiaries so as to promote and not defeat the purposes of insurance."[2]  Church Mutual argues that under Utah law, the scope of an insurers' duty to defend is determined first by comparing the language of the insurance policy with the allegations of the complaint.[3]  This is the "eight-corners" rule.  Church Mutual insists repeatedly that the general "eight-corners" rule is controlling in this case.  Utah law is clear, however, that the "eight-corners" rule is only a general rule, and where underlying allegations are ambiguous or uncertain, "the insurer must defend until those uncertainties can be resolved against coverage [by definitive evidence]. 'When in doubt defend.'"[4]  Church Mutual's response to this principle of Utah law, is that there is no ambiguity in the Free Wesleyan's allegations.  This is clearly not true.  Church Mutual claims that there is no allegation in the Free Wesleyan Complaint that Mr. Ma'Afu was in any way acting on behalf of the Corporation or that he had any authority for the Corporation with respect to the allegations made against him, and therefore he is not entitled to coverage.  The United Methodist Defendants, on the other hand, argue that the Free Wesleyan Complaint, including exhibits, alleges only that Mr. Ma'Afu had no authority to act for the Free Wesleyan Corporation, not that he had no authority to act for the local affiliated United Methodist congregation that Church Mutual insured; thus he is entitled to coverage.

---

[1] *Sharon Steel Corp. v. Aetna Cas. & Sur. Co.,* 931 P.2d 127, 133 (Utah 1997)(citing *Deseret Fed. Sav. & Loan Assoc. v. United States Fidelity & Guar. Co.,* 714 P.2d 1143, 1146 (Utah 1986).

[2] *United States Fidelity & Guar. Co. v. Sandt,* 854 P.2d 519, 521 (Utah 1993)(internal quotation marks omitted);  *Farmers Ins. Exch. v. Versaw,* 2004 UT 73, ¶ 24, 99 P.3d 796.

[3] *Employers Mutual Casualty Company v. Bartile Roofs, Inc.,* 618 F.3d 1153 (10th Cir. 2010).

[4] *Benjamin v. Amica Mut. Ins. Co.* 2006 UT 37, ¶ 22, 140 P.3d 1210 (citing Appleman § 136.2[C] (2d ed. 2006)).

Church Mutual also argues that under the "eight-corners" rule, the exhibits to the Free Wesleyan Complaint are not allegations and do not create any ambiguity.  The exhibits, however, are part of the Dissident Complaint under Utah law.  "The rules are clear that documents attached to a complaint are incorporated into the pleading for purposes of judicial notice and are fair game for this court to consider in addition to the complaint's averments."[5]

Church Mutual also argues that consideration of extrinsic evidence is not proper.  However, the principle that an insurance company must defend *whenever* it ascertains *facts from any source* that might give rise to potential liability has long been the law of Utah.[6]  In the *Equine* case, the Utah Supreme Court cited *Deseret* that "an 'insurer must make a good faith determination based on all the facts known to it, **or which by reasonable efforts could be discovered by it,**' whether there is a duty to defend under the terms of an insurance policy."[7]  Because an insurance company must investigate the facts, it is clear Utah Law does not allow an insurance company to read only a complaint's allegations and disregard facts made available that support coverage. Neither *Bartile Roof,* the case cited repeatedly by Church Mutual, nor any case decided by the Utah Supreme Court, holds that an insurance company can ignore facts demonstrating the existence of coverage, especially when underlying factual allegations are silent, ambiguous, or simply wrong.  A leading treatise states:

> The logic behind the rule [that an insurance company must consider evidence from whatever source when complaint allegations are silent, ambiguous, or wrong] is unassailable.  An insurer should not be able to escape its defense

---

[5] *Oakwood Village, LLC v. Albertsons, Inc.,* 104 P.3d 1226, 1231 (Utah 2004)(citing Utah R. Civ. P. 10(c)); ("An exhibit to a paper is a part thereof for all purposes.").

[6] *See Deseret Fed. Sav. & Loan Ass'n v. United States Fidelity & Grar. Co.,* 714 P.2d 1143, 1146 (Utah 1986).

[7] *Equine Assisted Growth and Learning Association v. Carolina Casualty Insurance Co.,* 2011 UT 49, ¶ 20, n. 22, 266 P.3d 733 (quoting *Deseret*)(emphasis added).

obligation by ignoring the true facts and relying on either erroneous allegations in the complaint or the absence of certain material allegations in the complaint.[8]

## II. Mr. Ma'Afu is Entitled to a Defense Under the Local package Policy Based Upon Allegations that Mr. Ma'Afu Wrongfully Evicted and Wrongfully Entered Real Property.

Mr. Ma'Afu is entitled to a defense under the Local Package Policy. Church Mutual has admitted that Mr. Ma'Afu is entitled to some coverage as an insured "Trustee" under that policy. *See* Dkt. #47 at 29-31; Dkt. #63 at 15; and Dkt. #64 at 44. Church Mutual argues that the "personal injury" coverage does not apply because the Dissident complaint labels the Third Cause of Action as one for "conversion," and the tort of conversion is not one of the offenses listed in the Local Package Policy. However, in Utah, the duty to defend is judged based upon a plaintiff's factual allegations, not the labels attached to a legal cause of action.[9] In this case, the Local Package Policy expressly covers "[t]he wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling, or premises that a person occupies." Dkt. #54 at 12-13 (¶ 16). The Free Wesleyans have alleged such conduct. Mr. Ma'Afu is alleged to have improperly exercised "authority over corporate property, to grant access for other persons to enter property and otherwise use, occupy, and enjoy its real property." Dkt. #54 at 15 (¶ 24). Church Mutual owes Mr. Ma'Afu a duty to defend under the Local package policy, having already conceded that he is an insured "Trustee."

---

[8] *See* A. Windt, 1 Insurance Claims and Disputes § 4.3 (5th ed. 1015).

[9] *See Taylor v. Am. Fire & Ca. Co.,* 925 P.2d 1279, 1283 (Utah Ct. App. 1996)("[c]overage does not turn on the legal theory under which liability is asserted").

**III. Church Mutual Must Provide a Defense to Mr. Ma'Afu Under the Professional Liability Policy.**

Church Mutual also must provide a defense to Mr. Ma'Afu under the Professional Liability Policy. The actual language of the Professional Liability Policy defines "Named Insureds" not based upon state corporation law, but instead based upon whether a local church is an affiliated congregation" of RMC and the United Methodist Church. *See* Dkt. #57 at 7-8 (¶ 3). The policy also provides express coverage for the payment of defense expenses in connection with either a "suit" or a "claim," contrary to Church Mutual's claim that it only provides coverage for defense expenses related to a "suit," defined with reference to "allegations."  Also the definition of  "Trustee" under the Professional Liability Policy is nearly identical to the definition under the Local Package Policy, under which Church Mutual conceded at least some coverage. Church Mutual has referred to Mr. Ma'Afu "formerly" having positions and authority to act for the corporation. Dkt. #64 at 35.  The Free Wesleyans do not allege that Mr. Ma'Afu's authority to act for the TUMC Local Affiliated Church ever changed, just that after December 7, 2012, Mr. Ma'Afu could not act for the Free Wesleyans under state corporate law after the amended articles.  The Court agrees with Mr. Ma'Afu that this allegation does not remove Church Mutual's obligation to defend Mr. Ma'Afu his "Trustee" actions as a leader of a religious organization, which were always within the scope of his actual authority.

Church Mutual has referenced two exclusions to support its refusal to defend, but neither exclusion defeat's Church Mutual's duty.  First, Church Mutual has referenced the "Insured versus insured" exclusion in the Professional Liability Policy.  The language of the policy excludes a claim "which is brought by or on behalf of [an] insured."  The language is the same as the language interpreted in *Equine* excluding "any Claim made against an Insured . . . by, on

behalf of, or in the right of [the named insured]."[10] The Utah Supreme Court considered this same issue and held that "when an insurance policy conditions the duty to defend on something outside of the complaint, extrinsic evidence is necessary to determine whether the duty has been triggered."[11] In *Equine*, the independent fact outside the complaint was whether the claims were "actually" brought by an insured. On its face, Church Mutual's exclusion, just like the operative language in *Equine*, does not depend on allegations; it depends on objective facts that determine whether a claim is *actually* brought at the time of filing by the "organization" or any other insured. Here the Free Wesleyans and their Board are not "Insureds" because the entity "Insureds" are RMC and its "affiliated congregations" and the only individual "Insureds" are "Trustees" who act "for" the "Named Insureds."

Similarly, the "personal profit" exclusion that Church Mutual cites contains express language that allegations are irrelevant. Only establishment of *actual receipt* of an *illegal* personal profit triggers this exclusionary language. Courts regularly find that such past tense language has no application to the duty to defend and applies, if at all, only in the event that legal liability is found based upon a "personal profit" actually received.[12] Finally, Church Mutual

---

[10] *Equine*, 2011 UT 49, ¶ 15.

[11] *Id.* ¶ 22.

[12] *See Wintermute v. Kansas Bankers Surety Co.*, 630 F.3d 1063, 1071-72 (8th Cir. 2011) (insurance company cannot rely upon personal profit exclusion to "deny a defense based solely on the allegations in the Complaint unless the facts are uncontested [and] [w]hether an insured in fact gained a personal profit is a fact issue that must be decided by a trier of fact if the relevant evidence is disputed"); *Fed. Ins. Co. v Cintas Corp.*, 2006WL 1476206 * 7 (S.D. Ohio May 25, 2006) (insurer must defend lawsuit and potential application of personal profit exclusion must await resolution of underlying litigation); *PMI Mortgage Ins. Co. v. Am. Internat'l Specialty Lines Inc. Co.,* 2006 WL 825266 *6-7 (W.D. Cal. March 29, 2006) (to rely on personal profit exclusion insurer must prove actual receipt of personal profit through final underlying adjudication or other proper evidence); *Am. Chem. Soc. v. Leadscope, Inc*. 2005 WL 1220746 *11-12 (Ohio Ct App. May 24, 2005) (personal profit exclusion "requires a final determination that an act of conversion has taken place resulting in the gaining of a profit or an advantage");

argues that the Dissident complaint allegations that Mr. Ma'Afu could not act for the Free Wesleyans' alleged corporation means that he was not an "insured" under the Professional Liability policy before and after December 6, 2012. Church Mutual's argument is contrary to policy language and objective facts. It is undisputed that at all relevant times, Mr. Ma'Afu acted for and on behalf of RMC and its affiliated local congregation and within the scope of his duties as a trustee for the affiliated local church.

### IV. Church Mutual Must Provide a Defense to RMC Under the Professional Liability Policy.

Church Mutual notes that by its clear and unambiguous terms, the language of the DOT coverage applies only to the defense of the insured against a lawsuit seeking payment from the insured for "loss." The Utah Supreme Court has specifically noted that liability insurance policies "do[] not provide for any representation of its insured in an action against another party."[13] Church Mutual states that RMC is not a defendant in either action, and therefore, Church Mutual DOT coverage does not apply. Church Mutual also notes that Exclusion h provides that this insurance does not apply to "Any claim which is brought by or on behalf of the organization or any insured." Church Mutual asserts that the Conference's Counterclaim against the Free Wesleyan faction in the lawsuit against Ma'Afu and its Complaint against the Free Wesleyan faction in its separate action, are claims "brought by or on behalf of the organization or any insured." The insured organization here is the conference.

---

*St. Paul Mercury Ins. Co. v. Foster*, 268 F.Supp.2d 1035, 1045 (C.D. Ill 2003) (insurance company position that "mere allegations that any insured gained a personal profit to which he was not legally entitled . . . void[s] coverage [is] untenable").

[13] *Berlant v. McAllister,* 25 Utah 2d 237, 239, 480 P.2d 126 (1972)

Defendant Rocky Mountain Conference (RMC) points out, however, that applicable case law recognizes that the assertion of claims designed to defensively resolve issues of ownership and control of property fall within the duty to defend.  The Court in *Hartford Fire Ins. Co. v. Vita Craft Corp.* stated that, "an insurer must pay the insured for defense of its counterclaims when either (1) the counterclaims reach the same or similar issues as the underlying plaintiff's claims so that the claims are intertwined; or (2) the counterclaims are part of the insured's defensive strategy to reduce its liability."[14]  In fact, "[t]he authority appears virtually uniform in holding that there is a class of affirmative claims which, if successful, have the effect of reducing or eliminating the insured's liability and [such claims] . . . are encompassed in an insurer's duty to defend."[15]

In this case, RMC intervened as a defendant.  RMC is the first named insured under the professional liability policy.  The third district court ordered that RMC could intervene as a "matter of right," finding that RMC had "a sufficient interest [under] Rule 24(a)" in the personal and real property that is the subject of the Free Wesleyan complaint.  RMC's claims seek to defensively diminish liability to the Free Wesleyans related to their claim of ownership and control of property held in trust for the United Methodist Church.  It was necessary for RMC to defensively refute the Free Wesleyans' allegations of ownership and control of church property because property rights do not reside with individuals (Mr. Ma'Afu), but instead are constitutionally protected from efforts to break away based on the existence of a trust for the benefit of the entire United Methodist Denomination.  RMC became a defendant because the

---

[14] *Hartford Fire Ins. Co. v. Vita Craft Corp.,* 911 F.Supp.2d 1164, 1183 (D. Kan. 2012)(citing cases).

[15] *Id.* (quoting *Great West Cas. Co. v. Marathon Oil Co.,* 315 F.Supp.2d 879, 881, 883 (N.D. Ill. 2003).

Free Wesleyans improperly sought to strategically claim ownership of property held in trust by suing only an individual.  If RMC is properly a defendant, the assertion of "claims" designed to defensively resolve issues of ownership and control of property, fall within the duty to defend.  The Free Wesleyan complaint and RMC's claims address the same fundamental issue of ownership and control of church property.  If RMC prevails, the Free Wesleyans' claim for damages related to possession and control will be eliminated.

### III. CONCLUSION

For the reasons stated above, the Court hereby grants United Methodist Defendants' Motion for Partial Summary Judgment on the Duty to Defend (Doc. #54) and directs Church Mutual to defend Mr. Ma'Afu in the state court consolidated lawsuit, and to pay the legal fees of the Rocky Mountain Conference of the United Methodist Church.

DATED this 5th day of August, 2015.

BY THE COURT:

*[signature: David Sam]*

JUDGE DAVID SAM
United States District Judge